IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAREN CHAGANTI, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>MICHELLE K. LEE, )<br>    Respondent. ) | Case No. 1:15-cv-1138 |

## MEMORANDUM OPINION

Petitioner, a Missouri attorney, was suspended indefinitely from Missouri practice, with the ability to seek reinstatement after one year, by the Supreme Court of Missouri for violating the Missouri Rules of Professional Conduct.[1] Based on the Supreme Court of Missouri's decision to suspend petitioner, the United States Patent and Trademark Office ("PTO"), before which petitioner was also admitted to practice, issued an Order imposing identical reciprocal discipline. Here, petitioner seeks judicial review of the PTO's imposition of reciprocal discipline pursuant to 35 U.S.C. § 32.

As the administrative record has been submitted and the parties have fully briefed the matter, it is now ripe for disposition. For the reasons that follow, the petition must be denied.

I.

Before setting forth the pertinent facts derived from the administrative record, it is useful to describe briefly the relevant statutory and regulatory context. Under 35 U.S.C. § 2(b)(2)(D), the PTO may "govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the office." Pursuant to this statutory authority, the

---

[1] Mo. Sup. Ct. R. 4.0.1, *et. seq.*

1

PTO has enacted its own Rules of Professional Conduct governing the conduct of all practitioners engaged in practice before the PTO. *See* 37 C.F.R. §§ 11.101-.901. If a registered PTO attorney fails to comply with his professional obligations, the PTO has the authority to suspend or exclude the practitioner from further practice before the PTO. 35 U.S.C. § 32; 37 C.F.R. § 11.19. Pursuant to this authority, the PTO has identified various grounds for discipline,[2] including reciprocal discipline brought against a practitioner who has been disciplined or disqualified from practice by another jurisdiction, such as a state bar. 37 C.F.R. § 11.24.

When the Director of the PTO's Office of Enrollment and Discipline ("OED") learns that a PTO practitioner has been disciplined in another jurisdiction, he "shall ... file with the [PTO] Director a complaint ... against the practitioner predicated upon the" discipline received elsewhere. *Id.* § 11.24(a). The PTO Director then issues a notice to the practitioner and the OED Director containing (i) "a copy of the record or order" regarding the discipline in the other jurisdiction, (ii) the OED Director's complaint, and (iii) "an order directing the practitioner to file a response" to the complaint that identifies any "genuine issue of material fact" within 40 days. *Id.* § 11.24(b). Thereafter, the PTO Director must adjudicate the complaint solely on the record, and "shall impose the identical public censure, public reprimand, probation, disbarment, suspension or disciplinary disqualification unless the practitioner clearly and convincingly demonstrates" that a different sanction is warranted based on one of the following factors, derived from the Supreme Court's decision in *Selling v. Radford*, 243 U.S. 46, 50-51 (1917):[3]

---

[2] *See, e.g.*, 37 C.F.R. §§ 11.19, 11.24, 11.804.

[3] Specifically, the Supreme Court in *Selling* held that one jurisdiction "should recognize" the discipline imposed by another "unless ... one or all of the following should appear": (i) a want of

2

(i) "[t]he procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process";

(ii) "[t]here was such infirmity of proof establishing the conduct as to give rise to the clear conviction that the [PTO] could not, consistently with its duty, accept as final the conclusion on that subject";

(iii) "[t]he imposition of the same public censure, public, reprimand, probation, disbarment, suspicion or disciplinary disqualification by the [PTO] would result in grave injustice"; or

(iv) "[a]ny argument that the practitioner was not publicly censured, publicly reprimanded, placed on probation, disbarred, suspended or disciplinarily disqualified."

37 C.F.R. § 11.24(d)(1). If the practitioner meets this heavy burden, the PTO Director must refer the complaint "to a hearing officer for a formal hearing." 37 C.F.R. § 11.25(d)(2). Otherwise, the PTO Director must issue a final order imposing reciprocal discipline. *See id.* § 11.24(d)(2). If at the conclusion of administrative proceedings, the PTO decides to suspend or exclude practitioners from appearing before the PTO, the PTO must issue an order stating the "reasons for any such suspension or exclusion." 35 U.S.C. § 32. The suspended or excluded party may then seek judicial review by filing a petition for review in "[t]he United States District Court for the Eastern District of Virginia, under such conditions and upon such proceedings as by its rules determines." *Id.* Pursuant to this statutory authority, the Eastern District of Virginia has issued Local Rule 83.5, E.D. Va. Loc. Civ. R., to govern petitions for judicial review pursuant to 35 U.S.C. § 32. Local Rule 83.5 provides, *inter alia*, that the administrative record is the "sole basis for review" of a PTO decision to exclude or suspend an attorney from practice before the PTO.

---

due process in the initial jurisdiction, (ii) an infirmity of proof in the initial proceeding, or (iii) a grave injustice that resulting from the imposition of reciprocal discipline. *Id.* at 50-51.

3

## II.

The pertinent facts from the administrative record, which provides the sole basis for review, may be succinctly stated.[4]

Petitioner Naren Chaganti is an attorney who prior to October 2014, was licensed to practice law in Missouri, and prior to August 2015, was licensed to practice law before the PTO. A547-48. Petitioner had a solo law practice in Town and Country, Missouri, and in addition to his law practice, petitioner was the sole officer and shareholder of Whispering Oaks RCF Management Company, Inc. ("Whispering Oaks"), a private corporation that operates a residential care facility for mentally disabled individuals in Wildwood, Missouri.

In 2009, Lafayne Manse, an employee of Ameren UE, a utility company, visited Whispering Oaks to read the electric meters. During his visit, Manse informed petitioner that Manse had a side business, Manse Heating and Cooling, which provided repair services for heating and air conditioning units. After learning this information, petitioner, on behalf of Whispering Oaks, entered into an agreement with Manse for service on air conditioning units at Whispering Oaks. A509, A528-29.

Thereafter, a dispute arose from this agreement between Manse and Whispering Oaks. And on July 30, 2009, Whispering Oaks filed a six-count civil complaint against Manse Heating and Cooling and Manse individually in the Circuit Court for St. Louis County, Missouri. Petitioner was not listed as a party to the action in either the caption or body of that complaint; rather, petitioner signed the complaint as "Attorney for Plaintiff," listing his Missouri Bar number. The docket sheet also reflects Whispering Oaks as the only party plaintiff and petitioner

---

[4] Citations to the administrative record are noted as "A" followed by the bates stamp number.

as the attorney for Whispering Oaks. A217-24, 279. Manse and his company retained Thomas DeVoto as their attorney.

At some point during this litigation, petitioner asked DeVoto for permission to speak privately with Manse to discuss the possibility of settlement, but DeVoto refused this request. A279, 508, 529, 549-50. The litigation continued for approximately three years until in September 2012, the state court dismissed Whispering Oaks' civil complaint without prejudice for failure to prosecute. Thereafter, Whispering Oaks filed a motion to set aside the dismissal, and on October 31, 2012, the state court orally denied that motion. That same day, according to DeVoto, petitioner again asked for DeVoto's permission to speak with Manse privately. DeVoto indicated that he would ask Manse whether he was interested in speaking directly to petitioner. In response, petitioner told DeVoto that petitioner was free to contact Manse because the civil complaint had been dismissed. DeVoto then informed petitioner that DeVoto still represented Manse with respect to Manse's dispute with Whispering Oaks, and if petitioner attempted to contact Manse, DeVoto would consider it a violation of the Missouri Rules of Professional Conduct and would file an appropriate complaint with the Missouri State Bar. A408-09, 510-12, 518-19.

The next day, November 1, 2012, petitioner mailed directly to Manse a letter bearing petitioner's law firm letterhead. In the letter, petitioner noted that had been unable to contact Manse "until the suit was dismissed" because Manse's "attorney refused to permit direct discussion between [petitioner and Manse] to settle the suit." A225. Petitioner further explained (i) that he intended to "refile the claim" against Manse, and that in the new complaint, he would "add Ameren UE," and (ii) "urge[d]" Manse "to discuss settlement out-of-court," stating that Manse "should think seriously about whether it [was] in [his] best interests to go to court again

5

or to close this matter at this time." *Id.* After Manse received petitioner's letter, Manse sent the letter to DeVoto via facsimile, with a cover sheet that stated, "I feel like I'm being harassed and threatened. Please help me." A413.

Thereafter, on November 16, 2012, DeVoto filed with the Missouri State Bar's Office of Chief Disciplinary Counsel a complaint against petitioner, alleging that petitioner's conduct violated, *inter alia*, the following Missouri Rules of Professional Conduct: (i) Rule 4-4.2, Mo. Sup. Ct. R., which prohibits attorney communications with a represented party, and (ii) Rule 4-8.4, Mo. Sup. Ct. R., which prohibits attorney conduct that is prejudicial to the administration of justice. A410-12. And in June 2013, the Missouri Chief Disciplinary Counsel filed a two-count Information against petitioner in the Supreme Court of Missouri, averring that there was probable cause to believe that petitioner had violated Rule 4-4.2 by contacting Manse without DeVoto's consent, and Rule 4-8.4 by attempting to intimidate Manse "in order to gain an unfair advantage in a legal dispute." A212-16.

Pursuant to Missouri's disciplinary procedures, the Information against petitioner was sent to the Missouri Disciplinary Committee ("Disciplinary Committee") for initial adjudication. During this adjudication, both the Missouri State Bar and petitioner were entitled to engage in written discovery, and indeed, petitioner transmitted fourteen individual document requests to the Missouri State Bar. Petitioner also served a subpoena on DeVoto seeking production of documents concerning DeVoto's attorney-client relationship with Manse. A438-41, 463-69. DeVoto moved to quash that subpoena on the ground that the requested materials were privileged, and the Disciplinary Committee granted that motion, holding:

> [Petitioner] and DeVoto are instructed to bring their Whispering Hills' [sic] files to the hearing. To the extent that [petitioner] believes that specific documents are essential to his defense against the Information, [petitioner] should inquire about such documents such that Mr. DeVoto can respond in particular as to whether

6

such documents exist in his file. ... If those documents do exist, the Panel can decide, after in camera review if it chooses, whether a document is privileged and/or can be redacted to make it part of the record.

A479.

Thereafter, at the January 24, 2014 evidentiary hearing before the Disciplinary Committee panel, DeVoto, Manse, and petitioner testified, and petitioner conducted cross-examination of both DeVoto and Manse. The hearing resulted in a transcript more than 260 pages in length. The Disciplinary Committee panel also permitted petitioner to file a post-hearing brief explaining his view of the evidence and the professional conduct rules in issue. A499-601, 844-54.

On March 13, 2014, the Disciplinary Committee panel issued a decision, concluding that petitioner had violated Rules 4-4.2 and 4-4.8. A2701-2800. Specifically, the panel concluded:

> (i) that DeVoto's testimony was credible and was bolstered by a memorandum that DeVoto had authored shortly after his second conversation regarding petitioner's desire to communicate directly with Manse;
>
> (ii) that petitioner had failed to identify any particular document in DeVoto's attorney-client file that petitioner needed in order to present his case, and had "failed to articulate any way in which his case had been hampered," A2795;
>
> (iii) that petitioner had violated Rule 4-4.2 by communicating with a represented party;[5]

---

[5] In reaching this conclusion, the panel expressly rejected petitioner's two primary arguments as to why he did not violate Rule 4-4.2. Specifically, the panel concluded (i) that contrary to petitioner's contentions, petitioner was not a "party" to the state court action—and therefore was not free to communicate with Manse in that capacity—because it was clear that petitioner was acting only in the capacity of legal representative of Whispering Oaks, and (ii) that "the dismissal of the litigation did nothing to alter the requirement that [petitioner] not contact [] Manse directly" because "the matter" to which Rule 4-4.2 refers was the underlying dispute concerning Manse Heating and Cooling's work on the air conditioning units, not exclusively the civil action. A2797-98.

7

(iv) that petitioner had engaged in conduct that was prejudicial to the administration of justice, in violation of Rule 4-8.4(d), insofar as petitioner's letter to Manse "sought to intimidate [] Manse by threatening to join his employer as a defendant when he re-filed the litigation," A2798-99; and

(v) that an indefinite suspension from the practice of law, with the ability to seek reinstatement to the bar within six months, was the appropriate sanction, noting that petitioner "barely skirt[ed] ... disbarment, since his violation comes close to falling within the prohibition of action with an intent to obtain a benefit for the lawyer and his entity," A2799-800.

Shortly thereafter, petitioner sought review of the Disciplinary Committee's decision with the Supreme Court of Missouri, and by Order dated October 28, 2014, the Supreme Court of Missouri rejected petitioner's arguments, holding that petitioner was guilty of misconduct as a result of violating Rules 4-4.2 and 4.8.4(d). Importantly, however, the Supreme Court of Missouri did not accept the panel's sanction in its entirety; although the Supreme Court of Missouri entered against petitioner an indefinite suspension from the practice of law, it precluded petitioner from seeking reinstatement for a full year. A875-937, 993.

On November 3, 2014, petitioner notified the OED of his Missouri State Bar suspension. A1. Approximately two weeks later, the OED asked petitioner to submit a signed statement within 30 days (i) "fully disclosing all facts and circumstances pertaining to [his Missouri State Bar] suspension," and (ii) explaining why reciprocal discipline should not be imposed. A2-3. Accordingly, on December 15, 2014, petitioner submitted a response to the PTO's request. A125.

Thereafter, on February 2, 2015, the PTO Director (i) notified petitioner that the OED Director had filed a complaint for Reciprocal Discipline against him based on the Missouri State Bar suspension, and (ii) directed petitioner to file a response "containing all information that [petitioner] believe[d was] sufficient to create a genuine issue of material fact that the imposition of discipline identical to that imposed by the Supreme Court of the State of Missouri ... would

8

be unwarranted," instructing petitioner to focus "his response upon information and argument" concerning the *Selling* factors as set forth in 37 C.F.R. § 11.24(d)(1). A1006. After receiving two extensions of time, on April 28, 2015, petitioner filed a lengthy response with the PTO. A1052, 1056, 1058-81.

Thereafter, on August 4, 2015, the PTO Director issued a twenty-page final Order imposing reciprocal discipline on petitioner identical to that which the Missouri Supreme Court had imposed. In the final Order, the PTO Director recognized that a "state suspension creates a federal-level presumption that imposition of reciprocal discipline is proper" and that a practitioner could avoid that presumption only by demonstrating by clear and convincing evidence "that there is a genuine issue of material fact as to one of the four factors" set forth in § 11.24(d)(1), but the PTO Director concluded that petitioner had "not satisfied this burden." A1957-76. Specifically, the PTO Director concluded with respect to each of the *Selling* factors:

> (i) that petitioner did not demonstrate by clear and convincing evidence "that the [Missouri] proceeding was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process," noting that petitioner had ample notice and an opportunity to be heard, including the ability to file pre-hearing motions, and to participate in an extensive evidentiary hearing, A1966-68;[6]
>
> (ii) that petitioner's mere disagreement with the outcome before the Supreme Court of Missouri—and the facts found in support of that outcome—did not carry petitioner's "difficult" burden to demonstrate the existence of the stark absence of proof necessary to avoid reciprocal discipline, A1969-71; and

---

[6] In reaching this conclusion, the PTO Director rejected petitioner's argument—that petitioner was deprived due process because the Missouri panel refused to allow petitioner to examine the full contents of DeVoto's attorney-client file—because petitioner was provided a full and fair opportunity to argue in favor of disclosure of such materials, and could not articulate to the Missouri panel or to the PTO any prejudice that resulted from not being allowed to review any specific document. A1966-68.

9

> (iii) that the Missouri suspension was not a "grave injustice" because that sanction was within the range of penalties for the unprofessional conduct in which petitioner was found to have engaged,[7] A1971-75.

The PTO Director also informed petitioner that if he desired further review, petitioner could file a petition for review in the United States District Court for the Eastern District of Virginia within 30 days of the order. A1976.

Thereafter, on September 4, 2015, petitioner filed a petition seeking judicial review of the PTO Director's final decision imposing reciprocal discipline. Specifically, petitioner challenges the PTO's final order on the following grounds: (i) "[i]n entering the order of suspension, the Director did not follow or apply the relevant statutory provisions as elaborated by the case law," and (ii) "[t]he Director is in error in not complying with the applicable regulations and guidelines." Pet. ¶¶ 6, 7.

### III.

Although petitioner cites 28 U.S.C. § 1331 as the source of federal jurisdiction in the present case, the basis for federal jurisdiction over this matter is 35 U.S.C. § 32, a more specific statutory basis for federal jurisdiction, because it is well-settled "that a precisely drawn, detailed statute pre-empts more general remedies." *Brown v. GSA*, 425 U.S. 820, 834 (1976).[8] In this regard, § 32 specifically provides that a suspended PTO attorney may seek Article III judicial review by filing a petition for review in "[t]he United States District Court for the Eastern District of Virginia, under such conditions and upon such proceedings as by its rules

---

[7] In this regard, the PTO Director further noted that petitioner's arguments to the contrary were not grounded in fact or actually militated in favor of a more severe sanction, and that petitioner still "fail[ed] to understand the gravity of his misconduct and, at worst, he lack[ed] any remorse for his misconduct." A1971-75.

[8] *See also Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 938 (Fed. Cir. 1991) ("The structure of the Patent Act indicates that Congress intended only the remedies provided therein to ensure that the statutory objectives would be realized.").

10

determines." 35 U.S.C.§ 32. Importantly, Local Rule 83.5 provides that any petition for judicial review of the PTO Director's final action pursuant to 35 U.S.C. § 32 must be filed within "30 days after the date of the order recording the Director's action." E.D. Va. Loc. Civ. R. 85.5. Here, because the PTO Director's final order suspending petitioner from practice before the PTO was dated August 4, 2015, A1957, petitioner was required to file any petition for judicial review of that final order on or before September 3, 2015. Hence, as the PTO correctly notes, petitioner filed the petition a day late, on September 4, 2015. Although petitioner missed the 30-day filing deadline and the petition could be dismissed on that basis, as a matter of grace, the petition will not be dismissed for late filing,[9] and accordingly, the petition's merits will be addressed.

### IV.

Petitioner contends that the PTO erred in imposing reciprocal discipline. The PTO contends that it did not so err because petitioner failed to establish by clear and convincing evidence that any of the *Selling* pointed to a contrary result.

Review of an order suspending an attorney from practice before the PTO pursuant to 35 U.S.C. § 32 is conducted pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq. Bender v. Dudas*, 490 F.3d 1361, 1365 (Fed. Cir. 2007). Accordingly, the PTO decision imposing reciprocal discipline may be held unlawful only if on the basis of the administrative record, the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706). More specifically, the PTO's decision may not be set aside unless petitioner (i) can establish by clear and convincing evidence that any of the *Selling* factors show that reciprocal discipline was unwarranted and (ii) can clearly

---

[9] In this regard, it is worth noting that the 30-day deadline is not jurisdictional, as the source of that deadline is a local rule rather than a statute passed by Congress. Thus, a one-day of extension of time may be granted.

11

establish that the PTO's contrary conclusion was arbitrary, capricious, or otherwise unlawful. Importantly, judicial review under the APA standard is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). Contrary to petitioner's contention, petitioner is not entitled to discovery. Petitioner was entitled to discovery during the proceedings before the Supreme Court of Missouri; here, petitioner is entitled only to judicial review of the administrative record. Loc. Civ. R. 83.5 (providing that the "sole basis for review" is the administrative record). Nor is petitioner entitled to de novo review, as he argues, because as already made clear, judicial review pursuant to 35 U.S.C. § 32 is governed by the APA, which makes clear that the PTO's decision must be reviewed under the arbitrary and capricious standard set forth in 5 U.S.C. § 706. Thus, the question here is whether the PTO's decision to impose reciprocal discipline and suspend petitioner from practice before the PTO was arbitrary, capricious, an abuse of discretion, or otherwise unlawful.

With respect to this question, the administrative record reflects that reciprocal discipline was warranted here. As already noted, under PTO procedures, which are entitled to deference in light of the congressional delegation of attorney discipline authority to the PTO,[10] reciprocal discipline "shall" issue "unless the practitioner clearly and convincingly demonstrates" that one of the *Selling* factors, as set forth in 37 C.F.R. § 11.24(d)(1), supports a different conclusion. *Id.* Here, as the PTO correctly contends, the PTO did not err in imposing reciprocal discipline, and

---

[10] *See Regis v. Holder*, 769 F.3d 878, 881 (4th Cir. 2014) (holding that where an agency charged with administering a statute promulgates a rule defining the meaning of ambiguous language therein, the agency's reasonable interpretation is entitled to deference); *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006) ("Under 35 U.S.C. § 2(b)(2), the PTO has broad authority to govern the conduct of proceedings before it and to govern the recognition and conduct of attorneys."); *Stevens v. Tamai*, 366 F.3d 1325, 1333 (Fed. Cir. 2004) (recognizing that 35 U.S.C. § 2(b)(2) is a delegation of plenary power over PTO practice).

petitioner fell well short of establishing by clear and convincing evidence that one of the *Selling* factors required a different result.

With respect to the first *Selling* factor—whether the procedure "was so lacking in notice or opportunity to be heard as to constitute deprivation of due process"—the PTO did not commit clear error in concluding that the proceedings before the Supreme Court of Missouri exceeded this threshold. 37 C.F.R. § 11.24(d)(1)(i). This is so because the proceedings before the Supreme Court of Missouri provided petitioner significantly greater process than the bare minimum due process requirements. Specifically, in these proceedings:

> (i) a detailed Information notified petitioner about the charges against him, A212-16;

> (ii) petitioner was provided an opportunity to respond to the Information in writing and to serve document requests on the Missouri State Bar, A438-41;

> (iii) petitioner participated in an extensive evidentiary hearing before the Missouri Discipline Committee panel, in which petitioner presented written and oral testimony and cross-examined witnesses who testified against him, A499-601;

> (iv) after the evidentiary hearing, petitioner was allowed to file a written brief with the panel explaining his view of the evidentiary record and the professional conduct rules he was charged with violating, A844-54; and

> (v) once the panel issued its decision, petitioner was allowed to present to the Supreme Court of Missouri a written argument against that decision, A52-112.

Thus, there can be no doubt that petitioner received far more than the minimum due process requirements—notice and an opportunity to be heard—that *Selling* requires. Moreover, contrary to petitioner's contention, the fact that the Missouri Discipline Committee panel quashed petitioner's subpoena for DeVoto's attorney file does not amount to a due process violation because petitioner was given an opportunity to argue that he was entitled to particular files—

13

which he failed to do[11]—and was allowed to question both DeVoto and Manse at the hearing. Accordingly, the PTO did not err in concluding that the proceedings before the Supreme Court of Missouri met the minimum due process requirements.

Nor did the PTO err with respect to the second *Selling* factor—whether "[t]here was such infirmity of proof establishing the conduct as to give rise to clear conviction that the [PTO] could not, consistently with its duty, accept as final the conclusion on that subject." 37 C.F.R. § 11.24(d)(1)(ii). In this regard, a review of the record reveals more than sufficient evidence to establish that petitioner violated the Missouri professional responsibility rules.

To begin with, petitioner insisted before the Supreme Court of Missouri—and before the PTO—that he had an absolute right to communicate with Manse because, in petitioner's capacity as sole owner of Whispering Oaks, he was a party to the litigation. A1064-65. Yet, as the Disciplinary Committee panel recognized, in the pleading that petitioner filed to commence the Missouri civil action, only Whispering Oaks—and not petitioner—was listed as a party plaintiff; indeed, petitioner was listed solely as "Attorney for Plaintiff." A217-24. Thus, the PTO did not err in concluding, on this basis, that there was record evidence to support the conclusion that petitioner was not an independent party to the dispute.

In addition, contrary to petitioner's contention, the record reflects more than sufficient evidence to support the PTO's conclusion that the attorney-client relationship between DeVoto and Manse continued beyond the non-prejudicial dismissal of the civil action. A1065-66. Importantly, Rule 4-4.2, Mo. S. Ct. R., does not proscribe contact with a represented party only during court proceedings; rather, it provides that "a lawyer shall not communicate about the

---

[11] Indeed, as the PTO recognized in its final order, petitioner failed to identify any particular document from DeVoto's file that he needed, but was unable to secure, in order to present a proper defense. *See* A2796, ¶ 32.

subject of the representation with a person a lawyer knows to be represented by another lawyer *in the matter.*" *Id.* (emphasis added). In this respect, both DeVoto and Manse testified that the scope of DeVoto's representation was not simply the civil action filed in state court, but the underlying dispute over the air conditioning unit repair at Whispering Oaks, and therefore the attorney-client relationship continued beyond the termination of the state court civil action. A508, 510-11, 533. The administrative record further reflects a reasonable basis for concluding that petitioner had knowledge that DeVoto and Manse's attorney-client relationship continued beyond the dismissal of the state court civil action because DeVoto testified that after the civil action was dismissed, DeVoto informed petitioner that DeVoto continued to represent Manse. *Id.* Although petitioner might disagree with DeVoto's testimony and the Disciplinary Committee's credibility assessment of DeVoto, mere disagreement with factual findings falls well short of establishing an infirmity of proof with respect to petitioner's conduct. Thus, the PTO did not err in finding that the Supreme Court of Missouri's decision to suspend petitioner was supported by sufficient record evidence.

Moreover, the PTO did not err with respect to the third *Selling* factor—whether "[t]he imposition of the same ... suspension by the [PTO] would result in grave injustice." 37 C.F.R. § 11.24(d)(1)(iii). This factor, as the PTO recognized, "focuses on whether the severity of the punishment 'fits' the misconduct," A1971, and therefore, as long as the discipline imposed "was within the appropriate range of sanctions" for the conduct in question, there is no grave injustice in imposing reciprocal discipline. *In re Attorney Disciplinary Matter*, 98 F.3d 1082, 1088 (8th Cir. 1996). Here, as the PTO recognized, Missouri looks to the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") to determine the appropriate discipline in a particular context. Under these standards, a suspension is generally appropriate

where, as here, an attorney engages in an unauthorized communication with a represented party. *See* ABA Standards 6.32, 7.2. Moreover, it is worth noting that petitioner's conduct was not merely a technical violation of the Missouri Rules of Professional Conduct; rather, petitioner's communication with Manse was confrontational and intimidating, as petitioner threatened to file a second civil action and to notify Manse's employer of the dispute. Indeed, as the Missouri Disciplinary panel noted, petitioner's conduct nearly warranted disbarment. A2799. And contrary to petitioner's contention, the fact that the discipline imposed here was different from the discipline imposed by the PTO in other reciprocal discipline cases does not create a grave injustice—or as petitioner suggests, and Equal Protection violation[12]—because the numerous PTO Director suspension decisions cited by petitioner involved facts and state disciplinary proceedings different from those in issue here.[13] Put simply, different facts lead to different results. Thus, the PTO did not err in concluding that the reciprocal imposition of a suspension would not constitute grave injustice.[14]

---

[12] Specifically, petitioner contends that the PTO decision was an Equal Protection violation because unlike in some other PTO suspension decisions, the PTO Director did not engage in any settlement discussion with petitioner, and therefore petitioner is a class of one. Yet, petitioner fails to point to any facts that establish petitioner as a class of one. *See Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that to establish as class-of-one, a plaintiff must show that the defendant intentionally treated him differently from others similarly situated without a rational basis).

[13] *See, e.g., In the Matter of Ben E. Lofstedt*, No. D2011-42 (PTO Dir. Feb. 16, 2012) (imposing reciprocal discipline predicated on a two-year state bar suspension, but allowing the practitioner to seek reinstatement after 30 days); *In the Matter of Frank C. Eymard*, No. D2011-05 (PTO Dir. Dec. 22, 2010) (imposing reciprocal discipline predicated on a one-year state bar suspension, but allowing the practitioner to seek reinstatement after seven months); *In the Matter of Darrell N. Fuller*, No. D2013-23 (PTO Dir. Mar. 12, 2014) (imposing a two-year agreed upon suspension where the practitioner had previously sentenced to jail time and fine for committing a felony in Texas).

[14] In addition to the three *Selling* factors, § 11.24(d)(1) includes a fourth factor, namely "any argument that the practitioner was not publicly censured, publicly reprimanded, placed on

In opposition to the conclusion reached here, petitioner notes that the Virginia State Bar and the California State Bar did not impose any reciprocal discipline on petitioner on the basis of the Missouri State Bar's decision to suspend petitioner. *See* Pet. Ex. 2, Virginia State Bar Order of Dismissal; Pet. Ex. 3, California State Bar Attorney Search. Importantly, however, the decisions of other state bars are irrelevant to the PTO's decision whether to impose reciprocal discipline in accordance with its own standards. The record does not reflect what, if any, action the California State Bar has taken with respect to petitioner, nor any reason for taking action or not taking action. The Virginia State Bar, by contrast, when presented with a reciprocal discipline action against petitioner, (i) dismissed the reciprocal discipline action because "the predicate order of suspension from Missouri was rendered under Missouri's preponderance of the evidence standard," a "lesser standard of proof than Virginia's [standard of proof]," and (ii) made clear that "[i]n dismissing this reciprocal discipline matter, the Board has not ruled on [the matter]" and that the matter could later be addressed "in a misconduct action" applying the correct standard of proof. Virginia State Bar Order of Dismissal. The Virginia State Bar decision is irrelevant here because the PTO correctly applied its own standards—not those of the Virginia State Bar—to determine whether reciprocal discipline was appropriate. And as already noted, the PTO did not err in concluding that under the PTO's standards, reciprocal discipline was appropriate here.

Finally, petitioner contends that the PTO erred in not imposing the reciprocal discipline against petitioner *nunc pro tunc*, as is allowed pursuant to 37 C.F.R. § 11.24(f) where, as here, a practitioner self-reports within 30 days an action by another jurisdiction. Importantly, however,

---

probation, disbarred, suspended or disciplinarily disqualified." 37 C.F.R. § 11.24(d)(1)(iv). Since petitioner does not contest that the Missouri State Bar did in fact impose a one-year suspension against petitioner, this factor need not be addressed here.

17

the decision whether to apply reciprocal discipline *nunc pro tunc* is left to the discretion of the PTO Director, as § 11.24(f) provides that "reciprocal discipline *may* be imposed *nunc pro tunc* only if" the practitioner meets certain requirements. *Id.* (emphasis added). Thus, even assuming petitioner met all of the requirement set forth in § 11.24(f), petitioner is not guaranteed *nunc pro tunc* imposition of reciprocal discipline, as the decision whether to impose the suspension *nunc pro tunc* was soundly within the discretion of the PTO Director.

In sum, the PTO's decision to impose reciprocal discipline against petitioner was not arbitrary and capricious or otherwise not in accordance with law because the record reflects that defendant did not—and cannot—establish by clear and convincing evidence that, on the basis of the *Selling* factors, reciprocal discipline was not warranted.

V.

For the reasons stated here, the PTO's decision to impose reciprocal discipline must be affirmed.

An appropriate Order will issue.

Alexandria, Virginia
May 11, 2016

/s/
T. S. Ellis, III
United States District Judge